IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:15-CV-00249-D

**Thomas Lee Burge,**

            Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of Social Security,

            Defendant.

**Memorandum & Recommendation**

Plaintiff Thomas Lee Burge instituted this action on December 1, 2015, to challenge the denial of his application for social security income. Burge claims that the Administrative Law Judge ("ALJ") Ronald Sweeda erred in failing to perform a function-by-function assessment of his residual functional capacity ("RFC") that adequately explained his reasoning. He also argues that the RFC does not include all the non-exertional functions arising from his severe mental impairments. Both Burge and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 16, 18.

After reviewing the parties' arguments, the court has determined that there ALJ Sweeda reached the appropriate decision. There is substantial evidence to support the RFC determination and that finding sufficiently explains ALJ Sweeda's reasoning. Additionally, the RFC reflects all of Burge's mental limitations that were well-supported in the record. Therefore, the undersigned magistrate judge recommends that the court deny Burge's motion, grant Colvin's motion, and affirm the Commissioner's decision.[1]

---

[1] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

**I.    Background**

On January 13, 2009, Burge protectively filed an application for supplemental security income alleging a disability that began on June 16, 2006. After his claim was denied at the initial level and upon reconsideration, Burge appeared at a hearing before an ALJ who determined that he was not entitled to benefits because he was not disabled. Tr. at 33–45. After unsuccessfully seeking review with the Appeals Council, Burge filed a complaint in this court. *See* E.D.N.C. No. 7:12-cv-299-D. By Order dated June 7, 2013, the Court remanded the matter for further consideration.[2]

Following the remand order, on March 18, 2015, Burge appeared before ALJ Sweeda for a hearing to determine whether he was entitled to benefits. ALJ Sweeda determined Burge was not entitled to benefits because he was not disabled. Tr. at 378–395.

ALJ Sweeda found that Burge had the following severe impairments: obesity; learning disorder; attention deficit hyperactivity disorder ("ADHD"); and personality disorder. *Id*. at 380. ALJ Sweeda also found that these impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* at 381. ALJ Sweeda then determined that Burge had the RFC to perform sedentary work with the following limitations: he cannot climb; he can occasionally crawl and kneel; he can frequently stoop; he can have no exposure to work hazards; he can do simple, repetitive tasks involving simple judgment with no direct customer service; he can do no work in a team setting; he can have occasional and gradually-introduced changes in the work setting and procedures; and he cannot work in a fast-paced production environment. *Id*. at 383. ALJ Sweeda also concluded that Burge had no past relevant work but that considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national

---

[2] Additionally, a new supplemental security income claim Burge filed on October 111, 2011 was associated with the present claim. Tr. at 378.

economy that he was capable of performing. *Id.* at 394–95. These include eyeglass frame polisher, cuff folder, and buckle wire inserter. *Id.* at 395. Thus, ALJ Sweeda found that Burge was not disabled. *Id.*

After unsuccessfully seeking review by the Appeals Council, Burge commenced this action by filing a complaint pursuant to 42 U.S.C. § 405(g) on December 1, 2015. D.E. 5.

## II. Analysis

### A. Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B. Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part

3

404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Background

Burge has been diagnosed with ADHD and obesity. Between 2006 and 2015, he sought treatment at Whiteville Medical Associates, primarily with Dr. F. Ray Thigpen. Tr. at 263–70, 305–11, 347–48, 352–59, 650–770. During this time, Burge had treatment for gastroesophageal reflux disease ("GERD"), hypothyroidism, sleep disturbance, degenerative joint disease, hypertension, overactive bladder, and high cholesterol. *Id*. at 263–70, 305–11, 650–770.

Providers regularly prescribed Synthroid for hypothyroidism and Adderall for ADHD, which Burge reported helped with his attention span. *Id*. at 305–07, 755. Treatment notes from 2010 generally reflect normal examination findings, no edema, and refills of medications. *Id*. at 670–80. In 2011, Burge complained of insomnia, and records reflect he slept during the day and was awake at night. *Id*. at 666–68. Throughout 2011, Burge had generally normal examinations and medications were refilled. *Id*. at 660–68. Dr. Thigpen also noted improvement in Burge's hyperlipidemia and ADHD with medication. *Id*. at 662.

Burge continued care with Dr. Thigpen who advised he stop smoking in March 2012. *Id*. at 657. Records reflect no edema and medications were refilled. *Id.* at 652, 656–57, 683. Burge

4

was advised to exercise. *Id*. at 652, 683. His routine care continued in 2013 where treatment notes largely reflect medication refills, normal examinations, normal gait, no complaints, no wheezing, and no edema. *Id*. at 684–87, 737–53.

Similar treatment followed in 2014 and 2015. *Id*. at 698–733, 772–93. Burge had generally normal examination findings and expressed no complaints. *Id*. Medication refills were ordered. *Id.* During this time, Burge reported feeling well and sleeping well. *Id*. at 690, 694, 702, 772, 777, 781, 790.

On October 12, 2005, Burge had a psychological consultation with Jerry Miller, M.A., who issued a report also signed by Jim Miller, Ph.D. *Id*. at 259–62. Miller opined that Burge would be able to follow one and two step instructions and perform routine, repetitive tasks. *Id*. at 260. A full scale IQ score of 74 was lower than a previous full scale IQ score of 81 from 1997, which Miller opined may be due to Burge's lack of motivation. *Id*. at 260–61. Miller diagnosed possible ADHD and borderline intelligence. *Id*. at 262.

Dr. Scott Schell performed a consultative psychiatric examination on February 7, 2009. *Id*. at 271–73. Dr. Schell diagnosed ADHD by Burge's reported history and borderline mental retardation. *Id*. at 272–73. He assigned a Global Assessment of Functioning ("GAF")[3] score of 60 at that time and 64 within the previous year. *Id*. Dr. Schell opined that Burge could understand simple directions but that his abilities to perform simple, repetitive tasks, to form working relationships, and to tolerate stress and pressures associated with employment were

---

[3] The GAF scale measures a person's overall psychological, social, and occupational functioning. Am. Psych. Assn., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. A GAF score between 51–60 indicates "[m]oderate symptoms or moderate difficulty in social, occupational, or school functioning." A score between 61–70 suggests "[s]ome mild symptoms or some difficulty in social, occupational, or school functioning but generally functioning pretty well, has some meaningful interpersonal relationships."

5

adversely affected by his mood swings, irritability, difficulty concentrating, and his obesity. *Id*. at 273.

Dr. Essam Eskander performed a consultative physical examination of Burge on April 3, 2009. *Id*. at 253–58. Dr. Eskander diagnosed him with morbid obesity, ADHD, hypertension, hypothyroidism, and multi-joint arthralgia. *Id*. at 255. He found that Burge's decreased range of motion was primarily affected by his weight, that he was easily distracted, and that he had a hard time remembering things. *Id*.

Burge had a psychological evaluation with Franklin Egolf, Psy.D., on July 30, 3009. *Id*. at 312–15. Dr. Egolf previously examined Burge four times. *Id*. Dr. Egolf noted Burge had full scale IQ scores ranging from 84 to 96. *Id*. at 312. Burge reported that he occasionally took courses at a community college, worked 15–20 hours per week in a local movie theater during the summer, had quit his job as a bagger at a grocery store because it was too boring, had his drivers license, and had no ongoing medical treatment other than taking Adderall for ADHD. *Id*. at 312–13. Dr. Egolf found that Burge had abilities and the potential to function in the average range but that he had deficits in attention and concentration. *Id*. at 314. He diagnosed ADHD and personality disorder. *Id*. Dr. Egolf opined that Burge could perform single tasks to their endpoint but doubted his ability to maintain employment due to lack of motivation and responsibility. *Id*. at 315.

Burge's primary care provider, Dr. Thigpen, issued a Medical Source Statement on January 6, 2009. *Id*. at 266–67, 310–11. He concluded that Burge was incapable of even sedentary work due to his impairments. *Id*. Dr. Thigpen issued a second Medical Source Statement on September 9, 2009, opining that Burge was totally and permanently disabled since October 1, 2008, due to his obesity, hypothyroidism, and ADHD. *Id*. at 347. A third Medical

6

Source Statement dated March 8, 2010, again opined that Burge was totally and permanently disabled. *Id.* at 352. This conclusion was reiterated in subsequent Medical Source Statements by Dr. Thigpen on August 24, 2010, and January 31, 2011. *Id.* at 356, 358–59.

State agency consultants also reviewed Burge's medical records. Dr. Robert Gardner opined in April 2009 that Burge could perform medium work with only occasional climbing of ladders, ropes and scaffolds, and avoidance of concentrated exposure to hazards. *Id.* at 276–79. On May 12, 2009, Dr. Clifford Charles opined that Burge was capable of short, routine, repetitive tasks with minimal interpersonal demands. *Id.* at 283–300. On August 31, 2009, Dr. Alan Cohen found that Burge could perform light work with occasional climbing of ladders, ropes, and scaffolds and avoidance of concentrated exposure to hazards. *Id.* at 321–28. On that same date, Dr. Brian Grover concluded that Burge could perform simple, routine, repetitive tasks in a stable, low-pressure environment with minimal interpersonal demands. *Id.* at 345.

At the hearing, Burge testified that he has a hard time concentrating and he has anxiety when he sits for too long. *Id.* at 408–09. He stated that he can stand for 30 minutes before his legs begin to swell, which requires him to sit down. *Id.* at 414. He spends most of his day watching television or using the computer. *Id.* at 411. He is independent in self-care. *Id.* at 416.

### D. Function by Function Assessment

Burge first argues that the ALJ's RFC finding is not based on substantial evidence. (Doc. No. 12 at 3). Specifically, he contends that the ALJ failed to provide a full function-by-function analysis of his limitations. He argues that the RFC should have included a requirement that Burge have a special chair designed for morbidly obese individuals and failed to include additional limitations found in the medical opinions evidence. The Commissioner submits that there is substantial evidence to support ALJ Sweeda's RFC finding.

The RFC is a determination, based on all the relevant medical and non-medical evidence, of what a claimant can still do despite her impairments; the assessment of a claimant's RFC is the responsibility of the ALJ. *See* 20 C.F.R. §§ 404.1520, 404.1545, 404.1546; SSR 96-8p, 1996 WL 374184, at *2. If more than one impairment is present, the ALJ must consider all medically determinable impairments, including medically determinable impairments that are not "severe," when determining the claimant's RFC. *Id*. §§ 404.1545(a), 416.945(a). The ALJ must also consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Id.* § 404.1523; *see Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[I]n evaluating the effect[] of various impairments upon a disability benefit claimant, the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them.").

Additionally, SSR 96-8p provides that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." It must also "include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p. The RFC must address both the exertional and non-exertional capacities of the claimant and must be expressed in terms of work-related functions. SSR 96-8p.

There is no "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis[.]" *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). However, "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in

8

the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

In addressing the function-by-function assessment, or lack thereof, the Fourth Circuit's recent decision in *Monroe v. Colvin* is instructive. *Monroe v. Colvin*, 826 F.3d 176 (4th Cir. 2016). The Court of Appeals remarked that "expressing the RFC before analyzing the claimant's limitations function by function creates the danger that 'the adjudicator [will] overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do.'" *Id.* at 187–88 (quoting *Mascio*, 780 F.3d at at 636) (citation omitted). The *Monroe* Court concluded that the ALJ made such an error. *Id.* at 188. It observed that the ALJ found that Monroe's sleep apnea and narcolepsy were severe impairments, but made no specific findings about whether these conditions "would cause him to experience episodes of loss of consciousness or fatigue necessitating breaks in work and if so, how often these events would occur." *Id.* Instead, the ALJ simply concluded that Monroe was capable of a reduced range of light work and that his claimed symptoms were not credible to the extent they were inconsistent with the RFC. *Id.* Remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review[.]" *Id.* (quoting *Mascio*, 780 F.3d at 636).[4]

---

[4] The Fourth Circuit also determined that the ALJ failed to satisfactorily explain his decision to partly discredit the claimant's allegations. *Monroe*, 2016 WL 3349355, at *11. The court observed that the ALJ failed to indicate how the facts he cited discredit claimant's allegations that he would lose consciousness two or three times daily and suffered extreme fatigue. *Id.* Remand was appropriate because the ALJ failed to "build an accurate and logical bridge from the evidence to his conclusion that [claimant's] testimony was not credible." *Id.* at *10 (citation omitted).

### 1. Obesity

Burge posits that given his morbid obesity and his limitation to a reduced range of sedentary work, ALJ Sweeda erred by failing to include in the RFC a finding that he requires a special chair. Burge contends that the Department of Labor ("DOL") requires special chairs for individuals weighing over 300 pounds. D.E. 17 at 10–11.[5] He points out, however, that the SSA does not permit consideration of accommodations in determining disability. *Id*. The Commissioner contends that a special chair is not required to accommodate Burge's obesity under the ADA and therefore its exclusion from the RFC was not erroneous. Indeed, the DOL website which Burge cites is not binding authority. Moreover, ALJ Sweeda did not find that a special chair is required for Burge and, therefore, neither the RFC nor hypothetical questions to the Vocational Expert ("VE") required its inclusion. *See Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (per curiam) (in order for a VE's opinion to be relevant or helpful, it must fairly set out all of claimant's impairments that are supported by the record); *Torres v. Astrue*, No. 07–2865, 2009 WL 873995, *8 (D.S.C. Mar. 30, 2009) (unpublished). ("[I]f the record does not support the existence of a limitation, the ALJ need not include it in the hypothetical question.").

Additionally, ALJ Sweeda thoroughly discussed Burge's obesity throughout his decision. Tr. at 380–81, 383–92. ALJ Sweeda specifically noted that, pursuant to SSR 02-1p, he

---

[5] Burge cites the DOL's Job Accommodation Network ("JAN"), which describes itself as a "source of free, expert, and confidential guidance on workplace accommodations and disability employment issues. Working toward practical solutions that benefit both employer and employee, JAN helps people with disabilities enhance their employability, and shows employers how to capitalize on the value and talent that people with disabilities add to the workplace." http://askjan.org/links/about.htm. With respect to accommodating obesity, JAN points out that "[l]arge-rated chairs are typically made to support individuals who are over 300 pounds." http://askjan.org/cgi-win/OrgQuery.exe?Cha40. Nothing on JAN indicates that such an accommodation is required of an employer. *See Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 317 n.8 (3d Cir. 1999) ("Employers may find it useful to take advantage of the Job Accommodation Network although we do not in any way suggest that employers are obliged to make use of this service.")

considered the potential effects Burge's obesity would have on his cardiovascular, musculoskeletal, and respiratory systems. *Id*. at 381. Additionally, as noted above, ALJ Sweeda's RFC finding limited Burge to sedentary work with limited crawling, kneeling, and stooping and no exposure to work hazards. *Id*. at 383. Such limitations would seem to account for his obesity. In making this determination, ALJ Sweeda noted that treatment records showed that despite his obesity, Burge was generally able to move about well and sustain consistent functioning. *Id*. at 385. He further observed that there was no evidence showing that Burge suffered from significant sleep apnea, continued heart disease, or uncontrollable blood pressure. *Id*. He concluded that Burge's obesity "has not had a negative effect on his ability to perform routine body movement beyond the [RFC] . . or upon his ability to sustain function over an 8-hour day." *Id*.

In sum, unlike *Monroe*, the court finds that ALJ Sweeda sufficiently addressed all of Burge's impairments, including his obesity, and made specific findings about the impact his impairments, including his obesity, would have on his functional abilities. Such findings are reflected in the detailed discussion of the medical evidence and Burge's testimony regarding his activities of daily living. ALJ Sweeda's conclusion that Burge's obesity did not impact his ability to perform routine movements consistent with the RFC findings contradicts Burge's argument on this issue. Meaningful review of ALJ Sweeda's decision is possible because he properly assessed Burge's capacity to perform relevant functions. There is no contrary evidence in the record supporting a finding that Burge's obesity precludes a reduced range of sedentary work. Consequently, this argument lacks merit and should be rejected.

## 2.     Other limitations assessed in the medical opinion evidence

Burge also argues that ALJ Sweeda erred by giving great weight to the state agency consultants but failing to include in the RFC all limitations that these consultants found. The Commissioner maintains, correctly, that an ALJ is not required to adopt all of an assessor's conclusions when affording it great weight.

The ALJ must weigh and evaluate all medical opinions received, regardless of the source. 20 C.F.R. §§ 404.1527(c), 416.927(c). Generally, opinions of treating sources are given greater weight than opinions of non-treating sources, such as consultative examiners. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). While a treating source's opinion usually is afforded "great weight," the ALJ is not required to afford it "controlling weight." *Craig v. Chater*, 76 F.3d 585, 589–90 (4th Cir. 1996). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id*. at 590. If the ALJ determines a treating source's opinion should not be given controlling weight, then the ALJ must evaluate and weigh the opinion according to the following non-exclusive list: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654 (citing 20 C.F.R. § 404.1527). The ALJ must state the weight given to a treating source's medical opinion and provide specific reasons for the weight given to those opinions. SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996).

Burge asserts that ALJ Sweeda failed to adopt all limitations offered by the consultants whose opinions were accorded significant weight. Specifically, Drs. Charles and Grover found that Burge would be: moderately limited in his abilities to maintain a schedule, attendance, and

12

Case 7:15-cv-00249-D   Document 21   Filed 10/24/16   Page 12 of 20

punctuality within the customary tolerances; moderately limited in his abilities to work with others without distraction; and moderately limited in his ability to complete a normal work day and work week  Tr. at 297–98, 343–44, 390. Additionally, at the initial level, Dr. Charles opined that Burge had no significant limitations in his ability to accept instructions and to respond to criticism. *Id*. at 298. On reconsideration, Dr. Grover concluded that Burge had moderate limitations in this ability. Burge contends ALJ Sweeda's failure to resolve this difference of opinion warrants remand.

ALJ Alston gave significant weight to the assessments of these consultants but did not incorporate all of the limitations they assessed. However, in according significant weight to a medical opinion, an ALJ is not bound to accept or adopt all the imitations set forth therein must be adopted. *See Bennett v. Colvin,* No. 3:13-CV-01176, 2015 WL 153950, at *13 (M.D. Tenn. Jan. 12, 2015) (holding that ALJ who accords great weight to opinion not required to adopt that opinion wholesale); *Razey v. Colvin*, No. 14-23, 2014 WL 4792150, at *2 (W.D. Pa. Sept. 23, 2014) (ruling that ALJ not required to adopt a medical opinion wholesale); *Lambert–Newsome v. Astrue*, No. 11-1141-CLP, 2012 WL 2922717, at *6 (S.D. Ill. July 17, 2012) (noting that merely because ALJ gave great weight to an opinion "does not mean he was required to adopt it wholesale"); *Irvin v. Astrue*, No. EDCV 11-23-AJW, 2012 WL 870845, at *2–3 (C.D. Cal. Mar. 14, 2012) (finding that, although ALJ gave great weight to medical source opinion, he did not err in implicitly rejecting one limitation from that opinion); *Armentrout v. Astrue*, No. 3:10-CV-504, 2011 WL 4625931, at *7 (E.D. Va. June 2, 2011) ("While the ALJ assigned 'significant' probative weight to the opinion, the ALJ was not then required to adopt every limitation and incorporate them into the RFC analysis."), *adopted by* 2011 WL 4625912 (E.D. Va. Oct. 3,

2011). Accordingly, ALJ Sweeda did not err, and remand is not warranted, by declining to adopt the the additional restrictions assessed by the state agency consultants .

Moreover, as the Commissioner points out, theses unadopted limitations were contained in Section I, the "Summary Conclusions" section, of Drs. Charles's and Grover's Mental Residual Functional Capacity Assessments. Tr. at 297–98, 343–44. These same findings were not part of the consultants' detailed narrative contained in Section III of the Mental Residual Functional Capacity Assessments. *Id*. at 299, 345. It is well-settled that the findings in Section I of Form 4734 (MRFC) are not representative of a claimant's RFC. The SSA's Program Operations Manual System ("POMS") explains the function and interpretation of Form SSA–4734 and each of its parts. The POMS states that Section I of SSA–4734, the "Summary Conclusions," is "merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment." POMS § DI 24510.060(B)(2)(a). Section III, the "Functional Capacity Assessment," is for recording the mental RFC determination. "It is in this section that the actual mental RFC assessment is recorded, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Id*. at (B)(4)(a).

Thus, there is no support for Burge's contention that ALJ Sweeda erred in failing to consider the additional limitations noted in the Summary Conclusions section of the assessments of Drs. Charles and Grover. *Moneyham v. Colvin*, No. 1:12-cv-1174, 2015 WL 1312822, at \*6 n.2 (M.D.N.C. Mar. 24, 2015) (citing *Taylor v. Astrue*, No. 5:10–CV–263–FL, 2011 WL 1599679, at \*11 n. 7 (E.D.N.C. Mar. 23, 2011) (noting "the severity ratings found in . . . Section

14

1 of the MRFC form do not equate to a mental RFC assessment"), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011)). As such, his argument on this issues lacks merit.

### E.     Non-exertional Limitations

Burge also contends that ALJ Sweeda's RFC determination failed to address the non-exertional limitations stemming from his mental impairments. At step three, ALJ Sweeda found Burge had mild limitations in activities of daily living and moderate limitations in social functioning and maintaining concentration, persistence, or pace. Tr. at 382. Burge argues that his RFC determination fails to account for these deficits. The Commissioner maintains that the RFC properly reflects all well-supported limitations, including Burge's non-exertional work capacity. The undersigned agrees that substantial evidence supports ALJ Sweeda's RFC determination and the non-exertional limitations contained therein.

As noted above, the RFC determination assesses what a claimant can still do despite her impairments. *See* 20 C.F.R. §§ 404.1520, 404.1545, 404.1546. Both exertional and non-exertional capacities compose the RFC. SSR 96-8p. Exertional capacity addresses an individual's physical restrictions such as his abilities to sit, stand, walk, lift, carry, push, and pull. *Id*. Non-exertional capacity considers work-related limitations and restrictions that do not depend on the claimant's physical strength, such as the ability to communicate, understand and remember instructions, or respond appropriately to supervision. *Id*. "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15; *see also* SSR 96-8p.

Under 20 C.F.R. §§ 404.1520a and 416.920a, adjudicators are required to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. While not an RFC assessment, the limitations identified in the "paragraph B" and "paragraph C" criteria are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. *Id*. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings. *Id*. ALJ Sweeda noted this in his decision Tr. at 382.

The question presented is whether ALJ Sweeda's RFC determination fully accounts for Burge's limitations noted in the Paragraph B findings at step 3. Burge contends that the RFC fails to address his ability to interact with coworkers, supervisors, and the general public; his ability to accept instruction and criticism; and his ability to stay on task for a full workday. However, as discussed above, ALJ Sweeda did not adopt these limitations, nor was he required to when affording them great weight.

ALJ Sweeda's finding that Burge cannot work in a team setting and can have no direct customer service or work in a team setting address his limitations in social functioning. *See Casillas v. Astrue,* 671 F. Supp. 2d 635, 658 (E.D. Pa. 2009) (finding ALJ's restriction of no team work adequately conveyed her finding that claimant suffered moderate limitation in social functioning); *Patterson v. Astrue*, No. C.A. 9:08-1065, 2009 WL 1586941, at * 3 (D.S.C. June 4, 2009) (restriction that claimant could not work with the general public, have close interaction with co-workers, and could not perform teamwork activities sufficiently addressed his moderate to marked limitations in social functioning). Additionally, in considering the evidence from the

psychological consultants, ALJ Sweeda sufficiently addressed their assessments and explained the reasons for the weight afforded to them. Tr. at 386–91. The state agency consultants' opinions noted that Burge may have difficulties interacting with coworkers and supervisors. *Id.* at 298–99, 344–45, 390. However, these same assessors also concluded Burge was capable of work that involved simple, routine, repetitive tasks with minimal interpersonal demands. *Id.* Additionally, although Dr. Charles opined that Burge may have some difficulty adapting to routine changes, upon reconsideration, Dr. Grover found he could respond appropriately to workplace changes. *Id.* at 390. Dr. Grover also found that Burge had the ability to accept instructions and respond appropriately to criticism. *Id.* These opinions were afforded great weight. *Id.* A 2005 consultative examination opined that Burge may have some difficulty getting along with others but it also found he could follow one and two step instructions and could perform routine, repetitive tasks. *Id.* at 260–62, 386. ALJ Sweeda gave this assessment some weight. *Id.* at 386. Because the RFC determination adequately reflects Burge's well-supported mental limitations, and because ALJ Sweeda did not adopt additional non-exertional limitations, Burge has failed to identify any error in the mental RFC determination.

Burge also challenges whether a limitation to simple, routine tasks complies with the *Mascio* finding that a limitation to simple, routine tasks or unskilled work may fail to account for a moderate limitation in concentration, persistence or pace. *Mascio*, 780 F.3d at 638.[6]

---

[6] The Fourth Circuit "agree[d] with other circuits that an ALJ does not account for a claimant's limitation in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work" because "the ability to perform simple tasks differs from the ability to stay on task." *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) (quotation omitted). In so holding, the Fourth Circuit emphasized that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Because the ALJ failed to explain why the plaintiff's "moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [plaintiff's] residual functional capacity," the Fourth Circuit remanded the *Mascio* case. *Id.*

As noted above, the RFC limited Burge to work involving simple, repetitive tasks and simple judgment. Tr. at 383. However, unlike *Mascio*, Burge's RFC additionally limited him to only occasional and gradually-introduced changes in the work setting and procedures and no fast-paced production environment. *Id*.

Moreover, other courts have found such limitations are sufficient to reflect a moderate limitation in concentration, persistence, or pace found at step three and are consistent with *Mascio*. *See, e.g.*, *Lee v. Colvin,* No. 5:15-cv-142-D, 2016 WL 816784, at *2 (E.D.N.C. Feb. 29, 2016) (limitation to simple, routine, repetitive tasks with no fast-paced or quota based work and occasional interactions with co-workers and supervisors but no sustained interaction with the general public comports with *Mascio*); *Dixon v. Colvin*, No. 4:14-CV-228-FL, 2016 WL 520293, at *7 (E.D.N.C. Jan. 21, 2016) (limitations for only occasional contact with coworkers and the general public, a low production occupation, no complex decision-making and no constant changes addressed claimant's moderate difficulties in concentration, persistence, or pace), *adopted by* 2016 WL 538460 (Feb. 9, 2016); *Ravman v. Comm'r*, No. SAG-14-3102, 2015 WL 6870053, at *2–3 (D. Md. Nov. 6. 2015) (RFC for "unskilled work; requires a low stress environment, such that there are few changes in the work setting and no fast-paced or quota production standards; and the claimant is limited to occasional contact with the public, supervisors, and co-workers[]" addressed moderate limitation in concentration, persistence, or pace); *Belton v. Colvin*, No. 14-CV-777, 2015 WL 5023087, at *8–9 (M.D.N.C. Aug. 24, 2015), *adopted by* 2015 WL 5712732 (M.D.N.C. Sept. 29, 2015) (RFC limitation to simple, routine, and repetitive tasks, avoidance of production work or similar fast-paced jobs with deadlines and quotas addressed claimant's limitations in concentration, persistence, or pace); *Weeks v. Colvin*, No. 5:14-CV-155-D, 2015 WL 5242927, at *2 (E.D.N.C. Sept. 8, 2015) (finding limitation to

"performing simple, routine, repetitive tasks with only occasional contact with the general public in an environment with few workplace changes" sufficiently accounts for difficulties with concentration and persistence); *Ford v. Colvin,* No 4:14-cv-79-D, 2015 WL 5008962, at * 3 (E.D.N.C. Aug. 19, 2015) (ALJ accounted for claimant's moderate limitations in concentration, persistence, or pace in RFC that contained limitations for low production and no constant change); *Linares v. Colvin*, No. 5:14–cv–120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) (distinguishing *Mascio* where ALJ limited claimant to simple, routine, repetitive tasks as well as a stable work environment at nonproduction pace with only occasional public contact, and finding that the nonproduction pace addressed limitations in pace and the stable work environment with only occasional public contact addressed limitation in concentration and persistence); *Hawley v. Astrue*, No. 1:09-cv-246, 2012 WL 1268475, at *7 (M.D.N.C. Apr. 16, 2012) ("[T]he restriction to unskilled, simple, routine, repetitive tasks and limited interaction with others adequately accounted for Plaintiff's intellectual deficit and problems with concentration, persistence, and pace[.]").

Finding no error in the consideration of Burge's non-exertional limitations, which are represented in the RFC determination and, likewise, in the hypothetical questions posed to the VE, Burge has failed to establish any error. Consequently, his argument on this issue lacks merit.

### III. Conclusion

For the forgoing reasons, the court recommends that the court deny Burge's Motion for Judgment on the Pleadings (D.E. 16), grant Colvin's Motion for Judgment on the Pleadings (D.E. 18), and affirm the Commissioner's decision.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall

have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Owen v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: October 24, 2016

_Robert T. Numbers II_
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE